UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2003 DEC 29 A

U.S. DISTRICT COURT
HARTFORD, CT.

Jackson Lewis LLP
59 Maiden Lane, 40th Floor
New York, New York 10038
(212) 545-4000

One North Broadway, Suite 1502
White Plains, New York 10601
(914) 328-0404

Attorneys of Record for Defendants
Elise M. Bloom (CT01451)
Jennifer B. Courtian (CT24058)
Robert R. Perry (CT22698)

HENNING N. KORNBREKKE,

          Plaintiff,

   -against-

THE STANLEY WORKS and THE
STANLEY WORKS HUMAN
RESOURCE RESTRUCTURING
PLAN - 5/13/97,

         Defendants.

Civ. No: 301CV00658 (AWT)

December 24, 2003

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

POINT I ........................................................................................................................... 1

THE ADMISSIBLE, UNDISPUTED EVIDENCE ESTABLISHES THAT STANLEY
HAD ONLY ONE SEVERANCE PLAN AND THAT PLAINTIFF'S § 502(A)(1)(B)
CLAIM FOR BENEFITS UNDER THAT PLAN IS GOVERNED BY THE
ARBITRARY AND CAPRICIOUS STANDARD OF REVIEW ...........................................1

    A.   Plaintiff's "Evidence" is Inadmissible and Insufficient to Defeat Defendants'
       Motion for Summary Judgment. ..............................................................................1

    B.   The Terms of the Severance Plan Remain Undisputed ...................................................3

    C.   The Court's Scope of Review Is Limited Because the Plan Administrator Was
       Not Influenced By A Conflict of Interest ......................................................................7

POINT II ........................................................................................................................ 10

THE PLAN ADMINISTRATOR'S DECISION DENYING PLAINTIFF'S CLAIMS
FOR SEVERANCE PLAN BENEFITS WAS REASONABLE. ...............................................10

    A.   Plaintiff's Employment Was Not Involuntarily Terminated On November 30,
       1998. Rather, Plaintiff Voluntarily Resigned Effective December 4, 1998. ...............11

    B.   Job Elimination Due To Restructuring Was Required In Order To Receive
       Benefits Under the Severance Plan, and Plaintiff's Job Was Not Eliminated...............14

    C.   Plaintiff's Rationale For His Failing to Sign the Agreement and General
       Release is Not Relevant. ........................................................................................15

POINT III....................................................................................................................... 16

REMAND IS THE APPROPRIATE REMEDY IF THE COURT DETERMINES
THAT THE PLAN ADMINISTRATOR'S DENIAL OF PLAINTIFF'S CLAIM FOR
BENEFITS WAS ARBITRARY AND CAPRICIOUS .............................................................16

POINT IV....................................................................................................................... 18

THE STANLEY WORKS IS NOT A PROPER PARTY TO PLAINTIFF'S CLAIM
FOR BENEFITS UNDER THE SEVERANCE PLAN. ............................................................18

POINT V ........................................................................................................................ 22

PLAINTIFF'S STATE LAW CLAIMS ARE PRE-EMPTED BASED ON THE
UNDISPUTED FACTS. .....................................................................................................22

POINT VI........................................................................................................................ 26

## **TABLE OF CONTENTS**

**Page**

PLAINTIFF'S CLAIM UNDER ERISA § 510 FAILS BECAUSE HE NEVER
BECAME ENTITLED TO BENEFITS UNDER BOTH THE SERP AND THE
SEVERANCE PLAN AT THE SAME TIME.....................................................................26

    A.    Plaintiff Cannot Establish a Claim for Violation of ERISA § 510 Under a
        Mixed-Motive Analysis ........................................................................................26

        1.    Mr. Trani's And Mr. Mathieu's Statements Do Not Demonstrate an
            Unlawful Intent to Deprive Plaintiff of His Benefits But Rather Demonstrate
            Their Belief That Plaintiff Never Became Entitled to Both the SERP and
            Severance Plan Benefits At the Same Time. ............................................................28

        2.    There is No Evidence That Stanley "Manipulated" Plaintiff's Termination
            Date. Rather, Plaintiff Unilaterally Selected December 4, 1998 As His Last
            Day With Stanley........................................................................................................30

    B.    Plaintiff Cannot Establish a Claim for Violation of ERISA § 510 Under the
        McDonnell Douglas Framework...........................................................................31

POINT VII ...........................................................................................................................33

DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS TO COUNT III
OF THE SECOND AMENDED COMPLAINT. ...................................................................33

CONCLUSION.....................................................................................................................34

## TABLE OF AUTHORITIES

### FEDERAL CASES

American Medical Association v. United Healthcare Corp.,
2003 U.S. Dist. LEXIS 1836 (S.D.N.Y. February 6, 2003) ........................................................20

Cantavero v. Horizon Meat and Sea Food Distributors, Inc.,
1998 WL 550756 (Conn. Super. August 20, 1998) ..................................................................25

Case Hospital of St. Raphael,
38 F. Supp. 2d 207 (D. Conn. 1999) ..........................................................................................23

Catania v. NYSA-ILA Severance Benefit Fund,
1992 WL 176502 (S.D.N.Y. July 15, 1992) ..............................................................................17

Chapman v. ChoiceCare Long Island Term Disability Plan,
2002 U.S. App. LEXIS 24460 (2d Cir. April 29, 2002) ............................................................21

Cole v. Aetna Life & Casualty,
70 F. Supp. 2d 106 (D. Conn. 1999) ..........................................................................................21

Crocco v. Xerox Corp.,
137 F.3d 105 (2d Cir. 1998) ..........................................................................................19, 20, 21

Crocco v. Xerox Corp.,
956 F. Supp. 129 (D. Conn. 1997) .............................................................................................19

De La Cruz v. New York City Human Resources Administration Department of Social
Services, 82 F.3d 16 (2d Cir. 1996) ...........................................................................................27

Desert Palace, Inc. v. Costa,
123 S. Ct. 2148 (2003) ................................................................................................................27

Diduck v. Kaszycki & Sons Contrators,
974 F.2d 270 (2d Cir. 1992) .......................................................................................................23

Dipietro-Kay Corp. v. Interactive Benefits Corp.,
825 F. Supp. 459 (D. Conn. 1993) .............................................................................................25

D'Ulisse-Cupo v. Board of Directors of Notre Dame High School,
202 Conn. 206 (1987) .................................................................................................................25

Fisher v. Building Service 32 B-J Health Fund,
1997 U.S. Dist. LEXIS 12886 (S.D.N.Y. August 25, 1997) .....................................................23

Goenaga v. March of Dimes Birth Defects Foundation,
51 F.3d 14 (2d Cir. 1995).................................................................................2

Hamburger v. Southern New England Telephone,
1998 U.S. Dist. LEXIS 6706 ........................................................................23

Jones v. UNUM Life Insurance Co.,
223 F.3d 130 (2d Cir. 2000)..........................................................................17

Jordan v. Ret. Committee Of Rensselaer Polytechnic Institute,
46 F.3d 1264 (2d Cir. 1995)............................................................................7

Keiser v. CDC Investment Management Corp.,
160 F. Supp. 2d 512 (S.D.N.Y. 2001)...........................................................23

Kennedy v. Empire Blue Cross and Blue Shield,
989 F.2d 588 (2d Cir. 1993)...........................................................................16

Kishter v. Principal Life Insurance Co.,
186 F. Supp. 2d 438 (S.D.N.Y. 2002)...........................................................23

Knight v. U.S. Fire Insurance Co.,
804 F.2d 9 (2d Cir. 1986), cert. denied, 107 S. Ct. 1570...............................2

Lee v. Burkhart,
991 F.2d 1004 (2d Cir. 1993).........................................................................19

Lidoshore v. Health Fund,
994 F. Supp. 299 (S.D.N.Y. 1998) ................................................................11

Mack v. United States,
814 F.2d 120 (2d Cir. 1987)........................................................................2, 5

McKinsey v. Sentry Insurance,
986 F.2d 401 (10th Cir. 1993) .......................................................................19

McNamee v. Bethlehem Steel Corp.,
692 F. Supp. 1477 (E.D.N.Y. 1988) ..............................................................24

Mendes v. Jednak,
92 F. Supp. 2d 58 (D. Conn. 2000)................................................................20

Miller v. International Telephone & Telegraph Corp.,
755 F.2d 20 (2d Cir. 1985).............................................................................11

Miller v. United Welfare Fund, 72 F.3d 1066 (2d Cir. 1995)........................................17

Mueller v. First UNUM Life Insurance Co.,
23 F. Supp. 2d 231 (N.D.N.Y. 1998)..........................................................................19

Myers v. Bethlehem Shipbuilding Corp.,
303 U.S. 41 (1938)....................................................................................................16

Nelson v. Neilson Media Research, Inc.,
235 F. Supp. 2d 313 (S.D.N.Y. 2002).........................................................................8

O'Shea v. First Manhattan Co. Thrift Plan & Trust,
55 F.3d 109 (2d Cir. 1995)..........................................................................................7

Pagan v. NYNEX Pension Plan,
52 F.3d 438 (2d Cir. 1995)..........................................................................................8

Patterson v. Retirement and Pension Plan,
2001 U.S. Dist. LEXIS 15949 (S.D.N.Y. October, 3, 2001)........................................18

Perma Research and Development Company v. Singer Company,
410 F.2d 572 (2d Cir. 1969)....................................................................................2, 5

Peterson v. Continental Casualty Co.,
282 F.3d 112 (2d Cir. 2002)......................................................................................16

Petrilli v. Gow,
957 F. Supp. 366 (D. Conn. 1997).............................................................................23

Raskin v. The Wyatt Co.,
125 F.3d 55 (2d Cir. 1997).........................................................................................27

Reeves v. Sanderson Plumbing Products, Inc.,
530 U.S. 133 (2000)..................................................................................................32

Rizk v. LTD Plan of Dun & Bradstreet Corporation,
862 F. Supp. 783 (E.D.N.Y. 1994) ............................................................................17

Roberton v. Citizens Utilities Co.,
122 F. Supp. 2d 279 (D. Conn. 2000).........................................................................8

Sandler v. New York News, Inc.,
721 F. Supp. 506 (S.D.N.Y. 1989) ............................................................................24

Schonholz v. Long Island Jewish Medical Center,
87 F.3d 72 (2d Cir. 1996)........................................................................................13

Schwimmer v. Sony Corporation of America,
637 F.2d 41 (2d Cir. 1980)......................................................................................2, 5

Sheehan v. Metropolitan Life Insurance Co.,
2002 U.S. Dist. LEXIS 11789 (S.D.N.Y. 2002)....................................................20, 21

Smith v. Dunham-Bush,
959 F.2d 6 (2d Cir. 1992)........................................................................................23

Sullivan v. LTV Aerospace and Defense Co.,
82 F.3d 1251 (2d Cir. 1996)....................................................................................8

Tholke v. Unisys Corporation,
2002 U.S. Dist. LEXIS 6658 (S.D.N.Y. April 15, 2002) .............................................17

Torosyyan v. Boehringer Ingelheim Pharmaceuticals, Inc.,
234 Conn. 1, 662 A.2d 89 (1995) ...........................................................................25

Torres v. CBS News,
879 F. Supp. 309 (S.D.N.Y. 1995), aff'd without opinion 71 F.3d 406 (2d Cir. 1995)....................2

Totton v. New York Life Insurance Co.,
685 F. Supp. 27 (D. Conn. 1988)............................................................................24

Union Insurance Society of Canton, Ltd. v. William Gluckin & Co.,
353 F.2d 946 (2d Cir. 1965).....................................................................................2

Van Zant v. KLM Royal Dutch Airlines,
870 F. Supp. 572 (S.D.N.Y. 1994), aff'd, 80 F. 3d 708 (2d Cir. 1996) .........................2

Warzecha v. The Nutmeg Cos. Inc.,
48 F. Supp. 2d 151 (D. Conn. 1999).......................................................................25

Whitney v. Empire Blue Cross and Blue Shield,
106 F.3d 475 (2d Cir. 1997)....................................................................................8

Zito v. SBC Pension Benefit Plan,
2002 U.S. Dist. LEXIS 17616 (D. Conn. 2002) ......................................................20, 23

**FEDERAL STATUTES**

ERISA, § 502(a)(3)...................................................................................................26

ERISA, § 502(a)(1)(B)..................................................................................1, 11, 18, 20, 26

ERISA, § 510 ..............................................................................................26, 27, 30, 31, 33

29 U.S.C. § 1002(16) ...........................................................................................................19

ERISA, 29 U.S.C. § 1133(2) ................................................................................................19

Fed. R. Civ. P. 56(e) ..............................................................................................................1

Defendants, The Stanley Works and The Stanley Works Human Resources Restructuring Plan-5/13/97 (collectively "Defendants"), submit this Reply Memorandum of Law in further support of their Motion For Summary Judgment.

## POINT I

### THE ADMISSIBLE, UNDISPUTED EVIDENCE ESTABLISHES THAT STANLEY HAD ONLY ONE SEVERANCE PLAN AND THAT PLAINTIFF'S § 502(A)(1)(B) CLAIM FOR BENEFITS UNDER THAT PLAN IS GOVERNED BY THE ARBITRARY AND CAPRICIOUS STANDARD OF REVIEW.

In his Opposition Brief, Plaintiff incorrectly contends that his claim for benefits under § 502(a)(1)(B) of ERISA is subject to a de novo standard of review. To support this assertion, Plaintiff: (1) attempts to create a factual issue regarding the terms of the Severance Plan; and (2) claims the Plan Administrator acted under a conflict of interest. Plaintiff's argument is based on statements which: (1) are not made on personal knowledge, (2) represent unsupported conjecture or speculation, and/or (3) are contained in an Affidavit of Henning Kornbrekke In Opposition to Defendants' Motion for Summary Judgment ("Kornbrekke Aff.") which impermissibly contradicts Plaintiff's deposition testimony. The only reliable and admissible evidence establishes that there was one Severance Plan and that, under the terms of the Plan, the Plan Administrator's decision to deny Plaintiff benefits is reviewable by this Court under the arbitrary and capricious standard of review.

### A.    Plaintiff's "Evidence" is Inadmissible and Insufficient to Defeat Defendants' Motion for Summary Judgment.

Fed. R. Civ. P. 56(e) requires, in relevant part, "opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Statements not made on personal knowledge do not comply with the rule and may not be

1

considered in opposition to a properly supported motion for summary judgment. See, e.g., Union Ins. Soc. of Canton, Ltd. v. William Gluckin & Co., 353 F.2d 946, 952 (2d Cir. 1965) ("conclusory statements and statements not made on personal knowledge do not comply with Rule 56(e) and, therefore may not be considered"); Torres v. CBS News, 879 F. Supp. 309, 319, fn. 13 (S.D.N.Y. 1995) ("unsupported allegations in a memorandum of law are insufficient under Rule 56(e) to raise an issue of fact"), aff'd without opinion, 71 F.3d 406 (2d Cir. 1995).

In addition to Rule 56(e)'s prohibition against the use of statements not made on personal knowledge, case law establishes that subjective and unsupported assertions, conjecture and speculation also cannot serve to defeat a summary judgment motion. See, e.g., Goenaga v. March of Dimes Birth Defects Foundation, 51 F. 3d 14, 18 (2d Cir. 1995) (plaintiff cannot defeat summary judgment "through reliance on unsupported assertions."); Knight v. U.S. Fire Ins. Co., 804 F. 2d 9, 11 (2d Cir. 1986) (party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."), cert. denied, 107 S. Ct. 1570; Van Zant v. KLM Royal Dutch Airlines, 870 F. Supp. 572, 574 (S.D.N.Y. 1994) (summary judgment cannot be defeated " 'by offering purely conclusory allegations of discrimination, absent any concrete particulars'. "), aff'd, 80 F. 3d 708 (2d Cir. 1996).

It also is well-settled that, where an affidavit submitted in opposition to a motion for summary judgment directly contradicts the prior deposition testimony, such a self-serving affidavit should be disregarded by the Court in ruling on the motion. Schwimmer v. Sony Corporation of America, 637 F.2d 41 (2d Cir. 1980); Mack v. United States, 814 F.2d 120, 124 (2d Cir. 1987); Perma Research and Development Company v. Singer Company, 410 F.2d 572 (2d Cir. 1969).

In light of these principals, the "evidence" introduced by Plaintiff in support of his argument that there were three severance plans is inadmissible and insufficient to defeat Defendants' properly supported argument that there was one Severance Plan and that, per its terms, the Plan Administrator's decision must be reviewed by this Court under the arbitrary and capricious standard.

**B.**    **The Terms of the Severance Plan Remain Undisputed**

The undisputed evidence establishes that, at all pertinent times, Stanley had one integrated Severance Plan which reserves discretionary authority to the Plan Administrator to determine claims for benefits.[1]    (See Courtian Aff., Exhibit H, p. 4; Memorandum of Law in Support of Defendants' Motion for Summary Judgment, pp. 5-7).  The Plan Administrator, who has direct knowledge of the Plan, testified that the Restructuring Guidelines supplement the Severance Plan by providing enhanced benefits to employees who meet the specified eligibility criteria.[2]  (Mathieu Depo., pp. 26-28, 41-42).  The Plan Administrator further testified that the procedures outlined in the basic Severance Plan booklet apply to the Restructuring Guidelines. (Mathieu Dep., p. 41).  Accordingly, claims for benefits under the Restructuring Guidelines

---

[1] Citations to Exhibits attached to the Affidavit of Jennifer B. Courtian in Support of Defendants' Motion for Summary Judgment dated February 18, 2003 shall appear as "Courtian Aff., Exhibit "__".

[2] Citations to the pages from the depositions of various witnesses throughout this Reply Brief shall appear using the same format as that used in Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment. Pages to these deposition transcripts cited to herein which were not attached to the Affidavit of Jennifer B. Courtian in Support of Defendants' Motion for Summary Judgment are attached to the Supplemental Affidavit of Jennifer B. Courtian, submitted simultaneously herewith, as follows:
- Exhibit "1": Plaintiff's Deposition taken on July 11, 2002;
- Exhibit "2": Mark Mathieu's deposition taken on July 9, 2002;
- Exhibit "3": John Trani's deposition taken on July 23, 2002;
- Exhibit "4": William L. Axline's deposition taken on November 6, 2002;
- Exhibit "5": John C. Corey's deposition taken on November 14, 2002;
- Exhibit "6": Richard Dandurund's deposition taken on October 10, 2002.

provisions are determined in accordance with the Claims Procedure set forth in the Severance Plan.[3]

In direct contravention of the Plan Administrator's testimony, Plaintiff claims there are three different severance plans instead of one and that the claims procedure set forth in the Severance Plan does not apply to benefits under the Restructuring Guidelines. To support this contention, Plaintiff relies on: (1) a statement in his Affidavit and in his Local Rule 9(c)2 Statement; (2) the Stanley Human Resource Guideline No. 3001 entitled "Separation Pay Policy – Salaried and Non-Union Hourly Employees, dated <u>January 1, 2002</u>; and (3) the separation agreements between Stanley and three former Stanley employees. (Opposition Brief, pp. 15-16). This "evidence" is insufficient to create a factual issue in light of the unambiguous testimony of the Plan Administrator, which is based on his personal knowledge.

First and foremost, Plaintiff's statement in his Affidavit that there were "various severance plans" (Kornbrekke Aff., para. 62), and in his Local Rule 9(c)2 Statement that there were "three completely separate criteria for receipt of severance benefits" (Plaintiff's Local Rule 9(c)2 Statement, para. 11), directly contradicts Plaintiff's deposition testimony where he unequivocally states there was only one severance plan:

> Q:    There are two different severance plans, are there not?
>
> A:    No, that's not true. The severance plan that we implemented was a single severance plan, and there was no – never any differentiation between severance plans, period. That was reality.

---

[3] In addition to the Plan Administrator's testimony, the text of the Restructuring Guidelines themselves demonstrate that they supplement the Severance Plan. Indeed, the second column in the Restructuring Guidelines is entitled "Current Policy or Practice." This refers to the basic Severance Plan benefits, (Mathieu Dep., pp. 26-27) and indicates the Restructuring Guidelines are an integrated part of the Severance Plan.

4

(Plaintiff's Dep. I, pp. 101-102).  As such, Plaintiff's Affidavit and statement in his Local Rule 9(c)2 Statement should be completely disregarded by this Court.  <u>See</u> <u>Schwimmer</u>, <u>supra</u>; <u>Mack</u>, <u>supra</u>, <u>Perma Research</u>, <u>supra</u>.

Second, Plaintiff's reliance on the Stanley Human Resource Guideline No. 3001, which became effective <u>January 1, 2002</u>, cannot defeat Defendants' Motion since it did not take effect until <u>over three years after Plaintiff's employment with Stanley ended and after he made a claim for severance, and such claim was denied</u>.  Plaintiff presents no evidence that this Guideline applied to the Severance Plan in effect in November/December 1998, at the time he made his claim.  Indeed, the January 1, 2002 Guideline itself states that it "supercedes and replaces any previous employee benefit plan related to separation or severance pay."  (See Exhibit "7" to Plaintiff's Local Rule 9(c)2 Statement).  This Guideline must be disregarded.

Finally, the separation agreements of three former Stanley employees are inapplicable to Plaintiff's assertion that there were three different severance plans.  As set forth in Defendants' Answer to Interrogatory No. 17, the moneys Stanley paid to the former employees listed in the chart attached to Defendant's interrogatory answer were <u>either</u> pursuant to the Severance Plan <u>or</u> pursuant to a negotiated separation package <u>outside the Severance Plan</u>.  (See Defendant's Answer to Interrogatory No. 17, attached as Exhibit "9" to Plaintiff's Local Rule 9(c)2 Statement).  Plaintiff's statement that these payments were pursuant to a separate severance plan established by Stanley is further contradicted by the deposition testimony of the three individuals and Mr. Mathieu.  Indeed, each former employee testified he received separation pay and benefits  pursuant to an individually-negotiated separation agreement which

he signed as a condition for receipt of such pay.[4] (Dandurand Dep., pp. 29-34; Corey Dep., pp. 26-50; Axline Dep., pp. 22-29, 35-51). Each admitted that he negotiated with Stanley concerning the terms of his separation agreement and that, as a result of the negotiations, certain terms in the separation agreement initially presented by Stanley were revised. (Id.) Two of the employees hired counsel to represent them in connection with the negotiations. (Dandurand Dep., p. 29; Axline Dep., p. 29, 35-43). None of the three individuals testified that there was more than one severance plan at Stanley or that the separation pay and benefits they received was under the Severance Plan.

Mark Mathieu, Vice President of Human Resources, confirmed that certain individuals whose employment was terminated but whose position was not eliminated due to restructuring may have received separation pay and benefits but that such separation packages did not come under the auspices of the Severance Plan but were pursuant to an agreement and general release entered into between Stanley and the individual. (Mathieu Dep., p.47-48). The fact that there were at least three people who individually negotiated separation agreements with Stanley does not establish that there was more than one Severance Plan and does not alter the standard of review applicable to determinations by the Plan Administrator of claims for benefits under the Plan. Plaintiff's bald assertion, without any evidentiary support, therefore, cannot defeat Defendants' Motion.[5]

---

[4] Citations to the depositions of Richard Dandurand, dated October 10, 2002, John Corey, dated November 14, 2002, and William Axline, dated November 6, 2002, herein shall appear as: "Dandurand Dep., p. __," "Corey Dep., p.__," and "Axline Dep., p.__," respectively.

[5] Although not directly cited to in Plaintiff's Opposition Brief, in his Local Rule 9(c)2 Statement, Plaintiff cites to the deposition of John Trani in support of his denial that there was one Severance Plan and his assertion that there were three. (See Plaintiff's Local Rule 9(c)2 Statement, para. 4). However, the citation to Trani's deposition is completely inappropriate since Mr. Trani specifically testified that he does not know the details of the Severance Plan as in effect in 1998 (Trani Dep., p 12), and was not involved in the administration of the Severance Plan. (Trani Dep., p.14). The pages cited by Plaintiff discuss the Supplemental Executive Retirement Plan instituted by Mr. Trani, his initial decision to terminate Plaintiff's employment and reason for that decision, and his conversation

In a further attempt to persuade this Court to apply a de novo standard of review, Plaintiff asserts "[t]here is no explicit grant of discretionary authority to determine eligibility for benefits to the administrator of either the executive severance policy and practice, or the administrator [sic] or under the 5/13/97 restructuring guidelines." (Opposition Brief, p. 15). Since Plaintiff's argument is premised on Plaintiff's unfounded assertion that there is a separate "executive severance policy and practice" and that the 5/13/97 restructuring guidelines constitute a separate severance plan, this argument is flawed. The only admissible evidence establishes that there was one Severance Plan, and the Restructuring Guidelines were a supplement to the Severance Plan. Defendants are not simply engrafting the provision reserving discretionary authority contained in the Severance Plan to the Restructuring Guidelines. (Opposition, p.16). Rather, since the Restructuring Guidelines are an integrated part of the Severance Plan, the Claims Procedure set forth in the Severance Plan applies to the Restructuring Guidelines.

The appeals procedure section of the Severance Plan explicitly reserves to the Plan Administrator discretionary authority to determine claims for benefits. (Courtian Aff., Exhibit "H", p. 4). As such, this Court is bound by the arbitrary and capricious standard in reviewing the Plan Administrator's decision denying Plaintiff's claim for benefits. O'Shea v. First Manhattan Co. Thrift Plan & Trust, 55 F.3d 109, 112 (2d Cir. 1995); Jordan v. Ret. Comm. Of Rensselaer Polytechnic Inst., 46 F.3d 1264, 1271 (2d Cir. 1995).

**C.    The Court's Scope of Review Is Limited Because the Plan Administrator Was Not Influenced By A Conflict of Interest**

In an attempt to discredit Mr. Mathieu's determination that Plaintiff was not entitled to benefits under the Severance Plan and expand the scope of the Court's review,

---

with Plaintiff wherein he gave Plaintiff a choice between receiving the SERP or severance. (Trani Dep., pp. 17-18, 29-30). Therefore, once again, Plaintiff's "evidence" does not support his claim.

7

Plaintiff argues, once again in a conclusory and unsubstantiated fashion, and by misrepresenting the deposition testimony, that Mr. Mathieu operated under a conflict of interest. Specifically, Plaintiff argues that because Mr. Mathieu directly reported to Mr. Trani, and Mr. Trani told Plaintiff he could only receive the SERP benefit or the Severance Plan benefits, but not both, that Mr. Mathieu in denying Plaintiff's claim for Severance Plan benefits "merely repeated Trani's decision to Mr. Kornbrekke," "did not make the decision to deny Kornbrekke his severance," and "was clearly influenced by his loyalty to his employer... [which] conflicted with his fiduciary obligations as 'administrator' of the severance plan." (Opposition Brief, pp.17-18). Plaintiff's argument fails both factually and legally.

In the Second Circuit, a reasonable interpretation of a Plan proffered by the plan administrator will be affirmed under the arbitrary and capricious standard of review unless the plaintiff can meet the burden of proving: (1) not only that a potential conflict of interest exists, but also (ii) that the alleged conflict of interest actually affected the reasonableness of the administrator's decision. Whitney v. Empire Blue Cross and Blue Shield, 106 F.3d 475, 476 (2d Cir. 1997); Sullivan v. LTV Aerospace and Defense Co., 82 F.3d 1251, 1255-1256, 1259 (2d Cir. 1996). See also Roberton v. Citizens Utilities Co., 122 F. Supp.2d 279, 286-87 (D. Conn. 2000). Plaintiff has not and cannot meet this burden. The mere fact that the plan administrator is employed by the plan sponsor "does not in itself create a conflict of interest," and is insufficient to show that the plan sponsor's decision actually was affected by a conflict of interest. Jordan v. Retirement Committee of Rensselaer Polytechnic Institute, 46 F.3d 1264, 1274 (2d Cir. 1995); Pagan v. NYNEX Pension Plan, 52 F.3d 438, 443 (2d Cir. 1995). Similarly, "[t]he simple fact that the plan administrator of a plan... happens to be 'an arm of the employer' does not in itself create a conflict of interest." Nelson v. Neilson Media Research, Inc., 235 F. Supp.2d 313, 320

(S.D.N.Y. 2002) (quoting Jordan, 46 F.3d at 1274) (rejecting plaintiff's claim that employee benefits committee operated under a conflict of interest when it denies plaintiff's claim for benefits merely because one of the members of the committee reported to defendant's senior vice president of human resources, who was also the individual who made the decision to discharge plaintiff).

Here, the deposition testimony belies any allegation that Mr. Mathieu suffered from, or actually was affected by, a conflict of interest. First, Mr. Mathieu testified that he does not recall having any conversation with Mr. Trani about Plaintiff's pay or benefits upon termination between October 12, 1998, when he initially sent the proposed separation agreement to Plaintiff, and when he received the November 16, 1998 letter from Plaintiff's attorney, Markus Penzel, whereby Plaintiff made a claim for Severance Plan benefits. (Mathieu Dep., p. 60). Moreover, there is no evidence that Mr. Mathieu consulted with Mr. Trani at any time after he received the November 16, 1998 letter from Mr. Penzel, regarding his decision to deny Plaintiff's claim for Severance Plan benefits. At best, Mr. Mathieu's testimony reflects that, prior to sending Plaintiff the proposed separation agreement, he spoke to Mr. Trani about the benefits Plaintiff was entitled to receive, and that the separation agreement reflects this conversation. (Mathieu Dep., p.54). However, since this preceded Plaintiff's claim for Severance Plan benefits and Mr. Mathieu's denial of that claim, this testimony does not demonstrate that Mr. Mathieu was influenced by, or simply repeated, Mr. Trani's decision in responding to Plaintiff's claim for benefits.

Second, Mr. Trani's testimony further dispels of any inference that his opinion of Mr. Kornbrekke's entitlement to Severance Plan benefits influenced Mr. Mathieu. Mr. Trani testified that he was not involved in the administration of the Severance Plan, does not, in

general, discuss with Mr. Mathieu whether a person will or will not get benefits under the Plan, and is not even familiar with the details of the Severance Plan as it was in effect in 1998. (Trani Dep., pp. 12, 14). Mr. Trani further testified that in the only conversation he had with Mr. Mathieu about Mr. Kornbrekke's benefits upon termination, he "explained to Mr. Mathieu that Mr. Kornbrekke would be receiving the SERP and that was it." (Trani Dep., pp. 25-26). In his Opposition Brief, Plaintiff misconstrues Mr. Trani's testimony in this regard. (Opposition Brief, p. 17). Contrary to Plaintiff's argument, Mr. Trani did not specifically mention anything to Mr. Mathieu about Plaintiff's entitlement to Severance Plan benefits. (Trani Dep., pp. 25-26). In fact, Mr. Trani testified that he never learned, until the institution of this instant litigation, that Plaintiff was seeking Severance Plan benefits. (Trani Dep., p. 27, 31).

Plaintiff's argument that Mr. Mathieu was influenced by, and simply repeated the decision of, Mr. Trani is unsupported and, in fact, contradicted by the deposition testimony. Since Plaintiff has provided absolutely no evidence that any conflict of interest existed, or that any conflict of interest affected the reasonableness of Mr. Mathieu's decision-making, Plaintiff's argument in favor of <u>de novo</u> review should be rejected. Even if the Court were to review Mr. Mathieu's decision <u>de novo</u>, however, for the reasons set forth in Point II, <u>supra</u>, the decision should be affirmed.

## POINT II

### THE PLAN ADMINISTRATOR'S DECISION DENYING PLAINTIFF'S CLAIMS FOR SEVERANCE PLAN BENEFITS WAS REASONABLE.

Plaintiff claims the Plan Administrator's decision denying his claim for Severance Plan benefits was not reasonable because: (1) Plaintiff's employment was involuntarily terminated on November 30, 1998; (2) job elimination due to restructuring is not required in order to receive benefits and, in any event, there is an issue of fact as to whether Plaintiff's job

10

was eliminated; and (3) Plaintiff had a legitimate reason for his refusal to sign an Agreement and General Release. Plaintiff's arguments are unsupported by law and contrary to the facts.

**A.      Plaintiff's Employment Was Not Involuntarily Terminated On November 30, 1998. Rather, Plaintiff Voluntarily Resigned Effective December 4, 1998.**

Plaintiff's argument that he was involuntarily terminated on November 30, 1998 and that Defendants should be estopped from rescinding that termination date (Opposition Brief, pp.18-21), is unavailing and inapplicable in the context of a claim for benefits under 502(a)(1)(B) of ERISA.

First, the cases upon which Plaintiff relies are inapplicable. Specifically, Plaintiff points to four cases to support his claim that the date of his termination was the date he received notice of his termination, not upon his actual discharge. (See Opposition Brief, p. 18). These four cases all deal with the 300-day statute of limitations to file a charge of discrimination with the Equal Employment Opportunity Commission under the Age Discrimination in Employment Act and state that the statute begins to run when an employee receives a definite notice of their termination, not upon their discharge. (See, e.g., Miller v. International Telephone & Telegraph Corp., 755 F.2d 20, 23 (2d Cir. 1985). None of these cases, however, discuss the standard for determining the reasonableness of a Plan Administrator's determination of an individual's eligibility for benefits, as is the issue here.

Under the arbitrary and capricious standard, the pertinent issue is whether the Plan Administrator's decision was reasonable. If reasonable, this decision must be accepted. Lidoshore v. Health Fund, 994 F. Supp. 299, 233 (S.D.N.Y. 1998). Here, it was reasonable for the Plan Administrator to conclude that Plaintiff's employment was not involuntarily terminated on November 30, 1998. The following undisputed facts support this decision:

- The Agreement and General Release provided to Plaintiff on October 12, 1998 was a proposal (Plaintiff's Dep. I, pp. 99-100);

11

- On the same day he received the proposed Agreement and General Release, Plaintiff spoke to Mr. Mathieu about it and expressed his dissatisfaction with its terms and began his attempts to negotiate over its terms (Plaintiff's Dep. I, p. 86);

- Thereafter, on November 16, 1998, Plaintiff's attorney, Markus Penzel, wrote a letter to Mr. Mathieu which unequivocally expressed Plaintiff's rejection of the terms of the proposed Agreement and General Release.  The letter did not discuss Plaintiff's termination date (Courtian Aff., Exhibit "K");

- After Plaintiff rejected Stanley's proposal, Mr. Mathieu told Mr. Penzel that Stanley withdrew its proposal and wished Plaintiff to remain employed indefinitely until Stanley found a replacement for him, and that if Plaintiff left before the date designated by Stanley as his last day of work, his termination would be considered voluntary (Penzel Dep., pp. 63, 69, 70-71, 75-78; Courtian Aff., Exhibit "L"; Plaintiff's Dep. I, pp. 125-26);

- Plaintiff never signed the Agreement and General Release provided to him or any other agreement with Stanley.  By not signing it, Plaintiff rejected the terms of the proposal, including the proposed termination date (Plaintiff's Dep. I, p. 97, 100);

- Notwithstanding Stanley's request that Plaintiff remain employed indefinitely, Plaintiff rejected this proposal and stated he would be leaving Stanley's employ on December 4, 1998 because he had accepted other employment.  (Penzel Dep., pp. 75-6; Plaintiff's Dep. I, pp. 116-17).

Thus, the unequivocal evidence contradicts Plaintiff's claim in his brief that on "December 1, 1998, Mathieu 'rescinded' Kornbrekke's termination." (Opposition Brief, p. 20).

Furthermore, Plaintiff's claims that he "relied upon the unequivocal notice that his last day of work was November 30, 1998" in that he "commenced looking for other work" (Plaintiff's Affidavit, para. 54; Opposition Brief, p. 19), contradicts Plaintiff's sworn deposition testimony and, therefore, cannot serve to defeat Defendants' Motion.  Specifically, at his deposition, Plaintiff testified that he did not commence a search for other work in reliance on the Agreement and General Release or take any steps beyond those he had taken over the last 10 years of his employment with Stanley in accepting telephone calls from headhunters.  (Plaintiff's Dep. I, p. 114).

The undisputed facts similarly do not support Plaintiff's claim that Defendants are estopped from denying Plaintiff Severance Plan benefits based on a theory of promissory

estoppel. (Opposition Brief, pp. 20-21).  First, as set forth above, the November 30 termination date was a suggested date set forth in the proposed Agreement and General Release provided to Plaintiff on October 12, 1998.  (Plaintiff's Dep. I, pp. 99-100; Courtian Aff. Ex. "N").  Significantly, this proposal, upon which Plaintiff bases his promissory estoppel claim did not promise Plaintiff Severance Plan benefits.  Plaintiff immediately expressed his dissatisfaction with the proposed Agreement and General Release  (Plaintiff's Dep. I, p. 86) and, by November 16, 1998, through his attorney, Markus Penzel, unequivocally rejected the terms of the proposal.  (Courtian Aff., Exhibit "K").  Thereafter, Mr. Mathieu told Mr. Penzel that Stanley wished Plaintiff to remain employed indefinitely until Stanley found a replacement for him.  (Penzel Dep., pp. 63, 69, 75-77; Plaintiff's Dep. I, pp. 125-126; Courtian Aff., Exhibit "L").  Thus, Plaintiff cannot satisfy the first element of a claim for promissory estoppel, namely, a promise that Defendants should have expected to induce an action or forbearance on the part of Plaintiff, since there was never a clear promise that November 30, 1998 would be Plaintiff's last day of employment and that, if Plaintiff complied with that promise, he would receive Severance Plan benefits.  See Schonholz v. Long Island Jewish Medical Center, 87 F.3d 72, 79 (2d Cir. 1996).

        Second, as set forth above, Plaintiff also cannot establish that he took any steps in reliance on any promise by Defendant.  Further, Plaintiff himself could have prevented any injury he allegedly suffered by remaining employed by Stanley until his replacement was located.

        Plaintiff unilaterally chose December 4, 1998 as his last day of employment with Stanley.  As such, he fails to satisfy the requirement in order to received Restructuring Guidelines benefits under the Severance Plan that he remain employed until such date as Stanley designates as his last day of employment.

13

**B.**    **Job Elimination Due To Restructuring Was Required In Order To Receive Benefits Under the Severance Plan, and Plaintiff's Job Was Not Eliminated.**

As set forth in Defendants' moving papers, the Plan Administrator's decision to deny Plaintiff benefits under the Restructuring Guidelines provisions of the Severance Plan further was reasonable because Plaintiff's job was not eliminated due to restructuring, as is required under the express Plan terms. (Courtian Aff., Ex. "J," p. 2). To refute this, Plaintiff claims that: (1) job elimination due to restructuring is not required in order for an MICP-eligible executive to receive benefits under the "current policy or practice" section of the Restructuring Guidelines (Opposition Brief, p. 21); and (2) there is a genuine issue of fact as to whether Plaintiff's position was eliminated due to restructuring. Neither argument is supported by credible evidence.

As to his argument that job elimination due to restructuring was not required in order to receive benefits under the "current policy or practice" section of the Restructuring Guidelines, Plaintiff relies on the same evidence noted in Point I.B, supra, to support his argument that there were three Severance Plans. Specifically, Plaintiff points to the separation agreements of three former Stanley employees. However, the testimony of the three former employees and Mr. Mathieu establishes that each such former employee received separation pay and benefits pursuant to an individually-negotiated separation agreement which he signed as a condition for receipt of such pay, and not pursuant to the Severance Plan. (Dandurand Dep., pp. 29-34; Corey Dep., pp. 26-50; Axline Dep., pp. 22-29, 35-51; Mathieu Dep., p.47-48). That three former employees received individually-negotiated separation pay does not refute the plain language of the Restructuring Guidelines, which state that job elimination due to restructuring is

14

a prerequisite to receipt of benefits.  (Courtian Aff., Ex. "J," p. 2).  Plaintiff fails to present admissible evidence that refutes the plain language of the Restructuring Guidelines.[6]

Second, Plaintiff's only "evidence" that his position was eliminated due to restructuring is his own testimony regarding his conversation with Mr. Trani on September 28, 1998 and his misrepresentation of Mr. Trani's testimony about this conversation  (Opposition Brief, pp. 22-23).  Specifically, Plaintiff claims that when he met with Mr. Trani on September 28, 1998, Mr. Trani   "intended to consolidate Stanley's Doors and Hardware Groups." (Opposition Brief, p. 22).  To the contrary, Mr. Trani testified that during his September 28, 1998 conversation with Plaintiff, he did not talk about combining Doors and Hardware into a single business unit, and that he does not even recall thinking about combining Doors and Hardware before he met with Plaintiff.  (Trani Dep., pp. 20-21).  **Further, the undisputable evidence establishes that at least three people have held Plaintiff's position since his discharge**.  (See Memorandum of Law in Support of Defendants' Motion for Summary Judgment, pp. 13-14). Plaintiff cannot refute this evidence.  Certainly the Plan Administrator's determination that Plaintiff's position was not eliminated and, therefore, he was not entitled to enhanced Severance Plan benefits under the Restructuring Guidelines cannot be found by this Court to be unreasonable.

C.    **Plaintiff's Rationale For His Failing to Sign the Agreement and General Release is Not Relevant.**

---

[6] Plaintiff's citation to Mr. Trani's testimony (Opposition Brief, p. 21) does not support his argument that job elimination due to restructuring was not required in order to receive the Restructuring Guidelines benefits he seeks. Indeed, Mr. Trani testified that he did not tell Plaintiff he was going to get the severance package but that he told Plaintiff "either you get the SERP or you get severed.  You don't get both." (Train Dep., p. 21-22).  Mr. Trani did not specify whether the "severance pay" to which he referred would come under the auspices of the Severance Plan or under a separate negotiated separation agreement.  Therefore, Mr. Trani's testimony does not alter the plain language set forth in the Severance Plan and Restructuring Guidelines thereto.

Finally, Plaintiff's rationale for failing to sign an the Agreement and General Release with Stanley is irrelevant since, based on the foregoing, Plaintiff was ineligible for the Restructuring Guidelines benefits under the Severance Plan.

## POINT III

### REMAND IS THE APPROPRIATE REMEDY IF THE COURT DETERMINES THAT THE PLAN ADMINISTRATOR'S DENIAL OF PLAINTIFF'S CLAIM FOR BENEFITS WAS ARBITRARY AND CAPRICIOUS

Plaintiff contends that a remand to the Plan Administrator is not an appropriate remedy because Plaintiff "has exhausted defendant's administrative claims procedure" and, even if he had failed to do so, "remand to the administrator would be futile, and exhaustion is not required." (Opposition Brief, p. 24). Defendants never have argued that Plaintiff failed to exhaust his administrative remedies. Rather, Defendants assert, and the case law cited below squarely supports, that a remand to the Plan Administrator is the appropriate remedy should this Court determine that the denial of Plaintiff's claim for benefits was arbitrary and capricious.

The doctrine of exhaustion of administrative remedies provides that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." Kennedy v. Empire Blue Cross and Blue Shield, 989 F. 2d 588, 592 (2d Cir. 1993), quoting Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51 (1938). In the ERISA context, exhaustion of remedies is a jurisdictional requirement which mandates that an ERISA plan participant exhaust a plan's claim and appeal procedures before filing suit. In the absence of exhaustion (or futility, an exception to the exhaustion requirement), a court must dismiss an action as premature. See, e.g., Peterson v. Continental Casualty Co., 282 F. 3d 112, 117 (2d Cir. 2002)(absent a determination by the plan administrator, court lacks jurisdiction

to adjudicate an ERISA claim for benefits); Jones v. UNUM Life Ins. Co., 223 F. 3d 130, 140-41 (2d Cir. 2000).

Defendants have not and do not argue that Plaintiff failed to exhaust administrative remedies, and do not seek dismissal of Plaintiff's claim for benefits on that basis. Accordingly, Plaintiff's arguments regarding his satisfaction of the exhaustion requirement or, in the alternative, the futility of pursuing administrative remedies, are moot.

Plaintiff's confusion notwithstanding, Defendants assert (See Point I E of the Memorandum of Law in Support of Defendants' Motion for Summary Judgment) that, should the Court find the decision to deny Plaintiff benefits was arbitrary and capricious, the proper remedy is a remand to the Plan Administrator for reconsideration. This firmly-established doctrine is premised upon both Congressional intent to not have federal district courts "function as substitute plan administrators and [ ] the ERISA goal of prompt resolution of claims by the fiduciary." Miller v. United Welfare Fund, 72 F. 3d 1066, 1071 (2d Cir. 1995) (internal citation omitted).

The propriety of remand as a remedy is well-supported by case law in this Circuit. See Tholke v. Unisys Corporation, 2002 U.S. Dist. LEXIS 6658, * 14 (S.D.N.Y. April 15, 2002)[7]; Rizk v. LTD Plan of Dun & Bradstreet Corporation, 862 F. Supp. 783, 793 (E.D.N.Y. 1994)(court, reviewing benefit denial under the arbitrary and capricious standard of review in context of defendant administrator's motion for summary judgment, denied motion and remanded for further consideration); Catania v. NYSA-ILA Severance Benefit Fund, 1992 WL 176502, *9 (S.D.N.Y. July 15, 1992).

---

[7] Copies of all unreported decisions cited to herein are attached to the Supplemental Affidavit of Jennifer B. Courtian dated December 24, 2003, in alphabetical order, as Exhibit "7."

Remand is mandated absent indicia of bad faith or intentional disregard of dispositive issues by a fiduciary (Id.), or a finding that remand would be a "useless formality" because the fiduciaries would necessarily have to grant the claim. Patterson v. Retirement and Pension Plan, 2001 U.S. Dist. LEXIS 15949, *16 (S.D.N.Y. October, 3, 2001)(remand not required where denial premised solely on failure to execute release, and court found that plan was never amended to include such requirement). In this instant case, there is no evidence of bad faith or that remand would be a "useless formality." Accordingly, in the event the Court determines the Plan Administrator's decision was arbitrary and capricious, the appropriate remedy is a remand.

### POINT IV

### THE STANLEY WORKS IS NOT A PROPER PARTY TO PLAINTIFF'S CLAIM FOR BENEFITS UNDER THE SEVERANCE PLAN.

In response to Defendants' argument that the Stanley Works is not a proper party to Plaintiff's claim for benefits under § 502(a)(1)(B) of ERISA, Plaintiff argues it "remains an issue of fact as to whether Defendant Stanley Works remains a proper party to Count One of the Amended Complaint," based upon his allegation that Stanley "controls the distribution of severance benefits." (Opposition Brief, p. 25). For the reasons set forth both in the Memorandum of Law in Support of Defendants' Motion for Summary Judgment, pp. 17-18, and below, Plaintiff's argument is wholly without merit. As a matter of law, Defendant the Stanley Works is not a proper party to Plaintiff's claim for benefits, and should be dismissed from Count One of the Amended Complaint.

In essence, Plaintiff argues that "a party who controls distribution of plan assets and determines who may receive benefits" is a proper defendant to a claim for benefits under ERISA. Id. However, this same argument has been considered, and explicitly rejected, by the

18

Second Circuit Court of Appeals. <u>Crocco v. Xerox Corp.</u>, 137 F. 3d 105 (2d Cir. 1998). The plaintiff in <u>Crocco</u> worked for Xerox Corporation and participated in its employee benefit plan. After her receipt of inpatient treatment, plaintiff sought benefits under the plan to cover the costs of her hospitalization. Following the denial of her claim, Crocco filed an action in federal court, named as Defendants the Plan Administrator, Xerox, and a case management entity, and asserted she had been denied a full and fair review of her claim in derogation of her rights under ERISA, 29 U.S.C. § 1133(2).

The district court dismissed the claim against the case management entity, but found the employer, Xerox, was a proper party even though it had designated a management-level employee as plan administrator, since Xerox "had sufficient control over administration of the plan" to make it a proper defendant to plaintiff's claim for benefits. <u>Crocco v. Xerox Corp.</u>, 956 F. Supp. 129, 137-38 (D. Conn. 1997).

The Second Circuit subsequently reversed, reiterating its long-standing rule that "in a recovery of benefits claim, only the plan and the administrators and trustees of the plan in their capacity as such" are proper defendants. <u>Crocco</u>, 137 F.3d at 107, <u>quoting</u> <u>Leonelli v. Pennwalt Corp.</u>, 887 F. 2d 1195, 1199 (2d Cir. 1989). Where (as here) a plan specifically has designated a plan administrator in accordance with ERISA[8], then employer liability is precluded. <u>Crocco</u>, 137 F. 3d at 107. <u>See</u> <u>also</u> <u>Lee v. Burkhart</u>, 991 F. 2d 1004 (2d Cir. 1993)(employers are not de facto administrators); <u>McKinsey v. Sentry Insurance</u>, 986 F. 2d 401 (10th Cir. 1993)(individual or entity designated as administrator is the administrator for ERISA purposes, not the employer); <u>Mueller v. First UNUM Life Ins. Co.</u>, 23 F. Supp. 2d 231, 234-235 (N.D.N.Y.

---

[8] The plan "administrator" is defined as the party so designated in a plan's governing documents and, in the absence of such designation, the plan's sponsor. 29 U.S.C. § 1002(16)(A).

19

1998)(the law in the Second Circuit "precludes employer liability" where another individual or entity is named plan administrator in the plan documents.)

This Court has subsequently issued several opinions that are in accord with the Second Circuit's holding in <u>Crocco</u>.  <u>See</u>, <u>e.g.</u>, <u>Mendes v. Jednak</u>, 92 F. Supp. 2d 58 (D. Conn. 2000)(employer cannot be held liable for benefits under the terms of an employee benefit plan unless it is the designated plan administrator); <u>Zito v. SBC Pension Benefit Plan</u>, 2002 U.S. Dist. LEXIS 17616 (D. Conn. 2002)(same).

In sum, the long-standing and current precedent in this Circuit is that an employer who has designated another individual or entity as plan administrator "cannot be held liable" for a claim for benefits under ERISA § 502(a)(1)(B), and, therefore, is "entitled to dismissal of the claims against it." <u>Crocco</u>, 137 F. 3d at 108.

The cases cited by Plaintiff in his Opposition Brief do not compel a different conclusion.  <u>Sheehan v. Metropolitan Life Ins. Co.</u>, 2002 U.S. Dist. LEXIS 11789 (S.D.N.Y. 2002) involved a discovery dispute; Judge Haight, in dicta, noted that "if an <u>insurance company</u> controls the distribution of funds <u>and decides whether or not to grant benefits</u> under an employee benefit plan, then it can be sued as a plan administrator" in a claim for benefits under such plan. <u>Id</u>., at *6 (emphasis added).

<u>American Medical Association v. United Healthcare Corp.</u>, 2003 U.S. Dist. LEXIS 1836 (S.D.N.Y. February 6, 2003) involved a motion to reconsider the court's prior legal conclusion, on a motion to dismiss "that an <u>insurer</u> which actually controlled the distribution of funds and decided whether or not to grant benefits can be sued as a plan administrator." <u>Id</u>. at *3 (emphasis supplied)(internal citations omitted).  The Court, on reconsideration of its order, noted that "Judge Haight's statement in <u>Sheehan</u>" had not been specifically rejected by the Second

20

Circuit, and that a "factual dispute" (Id., at *3) mandated that "the time to address the issue is after the relevant discovery is complete." Id., at *5.

The concerns expressed in Sheehan and American Medical Association are not present here. First and foremost, Stanley is not an insurer. In addition, there is no factual dispute that Mark Mathieu was designated Plan Administrator of the Severance Plan. Lastly, the motion before this Court is one for summary judgment, and not a motion to dismiss (as was the case in American Medical Association and another case cited by Plaintiff, Cole v. Aetna Life & Cas., 70 F. Supp. 2d 106 (D. Conn. 1999)).

The issue in Chapman v. ChoiceCare Long Island Term Disability Plan, 2002 U.S. App. LEXIS 24460 (2d Cir. April 29, 2002), the sole Second Circuit case cited by Plaintiff, was whether an employee benefit plan was a proper party defendant in a claim for benefits. The Court, citing Crocco and Leonelli, reaffirmed the rule in this Circuit that "only the plan and the administrators and trustees" of a plan are proper party defendants. Id. at *7. Chapman, therefore, does not support Plaintiff's argument here.

Count One must be dismissed as against Defendant Stanley Works on the basis of the binding precedent in this Circuit. Here, as in Crocco, an individual was designated as the Plan Administrator in accordance with ERISA. Notwithstanding Plaintiff's allegations that Stanley controlled the administration of the Plan, it is not a proper party to Count One.[9]

---

[9] Furthermore, as discussed at Point I C, supra, there is no evidence that Mr. Mathieu consulted with, or was influenced by, Mr. Trani in connection with his decision to deny Plaintiff's claim for Severance Plan benefits. Thus, Plaintiff's argument that it remains an issue of fact as to whether the Stanley Works is a proper party to Count I of the Amended Complaint is unsupportable.

## POINT V

## <u>PLAINTIFF'S STATE LAW CLAIMS ARE PRE-EMPTED BASED ON THE UNDISPUTED FACTS.</u>

Plaintiff incorrectly asserts that, per "the law of the case doctrine," Defendants' Motion for Summary Judgment as to Plaintiff's state law claims on ERISA preemption grounds must be denied. The prior arguments that ERISA preempts Plaintiff's state law claims were made in connection with Plaintiff's Motion to Amend the Complaint to add various state law claims and two motion for reconsideration (one by Plaintiff and one by Defendants) of the Court's ruling as to this issue. Unlike on a motion to amend the complaint, now on summary judgment the Court is asked to determine whether, in light of the undisputed material facts, Plaintiff's state law claims are preempted by ERISA. Defendants assert that this question must be answered in the affirmative and that, accordingly, Plaintiff's state law claims must be dismissed.

The discovery process, including Plaintiff's deposition, reveal: (1) the factual bases for Plaintiff's state law claims; and (2) the relief Plaintiff seeks in connection with these claims. These undisputed facts demonstrate that Plaintiff's state law claims are exactly the type of claims preempted by ERISA. Specifically, there is no dispute that Plaintiff's state law claims are premised on a conversation Plaintiff had with Mr. Trani about the <u>severance benefits</u> he would be entitled to receive upon the termination of his employment. (Opposition Brief, p. 39). Plaintiff testified that, in that conversation, Mr. Trani stated that, upon the termination of his employment, he "would receive 65 weeks severance and 'the package'." (Second Amended Complaint, para. 25; Plaintiff's Deposition I, p. 68; Affidavit of Henning Kornbrekke in Opposition to Defendants' Motion for Summary Judgment, para. 35). There also is no dispute that, in connection with his state law claims, and this entire suit, Plaintiff solely seeks the

22

benefits provided under and described in the Restructuring Guidelines provisions of the Severance Plan. (Plaintiff's Deposition I, p. 46; Plaintiff's Deposition II, pp. 13-14, 18-19, 22-23). Plaintiff is not seeking any economic damages (such as back pay) associated with foregone employment. (Plaintiff's Deposition I, p. 36).

The case law set forth in Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment (see pages 22-23) demonstrates that where, as here, the sole relief sought by a plaintiff is benefits described in, and paid under, and ERISA plan, and the plaintiff seeks to use state law claims as an alternative enforcement mechanism to recover the ERISA plan benefits, such claims `relate' to the ERISA plan and, therefore, are preempted by ERISA. Diduck v. Kaszycki & Sons Contractors, 974 F.2d 270, 288 (2d Cir. 1992); Smith v. Dunham-Bush, 959 F.2d 6, 11 (2d Cir. 1992); Keiser v. CDC Investment Management Corp., 160 F. Supp.2d 512, 517 (S.D.N.Y. 2001); Kishter v. Principal Life Ins. Co., 186 F. Supp.2d 438, 446-47 (S.D.N.Y. 2002). As also set forth in Defendants' moving papers (see pp. 23-24), where, as here, state law claims are contingent upon, or arise because of the existence of, an ERISA plan, those claims are preempted by ERISA. Smith, 959 F.2d at 10; Case Hospital of St. Raphael, 38 F. Supp.2d 207, 209 (D. Conn. 1999); Hamburger v. Southern New England Telephone, 1998 U.S. Dist. LEXIS 6706, at *7; Petrilli v. Gow, 957 F. Supp. 366, 373 (D. Conn. 1997); Zito v. SBC Pension Benefits Plan, 2002 U.S. Dist. LEXIS 17616, at *7 (D. Conn. July 18, 2002); Fisher v. Building Service 32 B-J Health Fund, 1997 U.S. Dist. LEXIS 12886, at *3 (S.D.N.Y. August 25, 1997). Since Plaintiff's state law claims are contingent upon the existence and terms of the Restructuring Guidelines provisions of the Severance Plan, and he solely seeks benefits provided under the Severance Plan, all such claims relate to the Severance Plan and, therefore, are preempted.

The cases cited by Plaintiff in his Opposition brief (see pages 37-38) do not compel an opposite conclusion. Specifically, virtually none of the plaintiffs in the cases cited sought benefits under an employee welfare benefit plan as does Plaintiff here, who alleges he is owed benefits pursuant to the Restructuring Guidelines of the Severance Plan. Rather, the plaintiffs in the cases cited sought to recover damages, such as the value of lost employment benefits, due to the defendant's alleged breach of contract, negligent misrepresentation, wrongful discharge, fraud, or other alleged wrongful conduct. For example, in Sandler v. New York News, Inc., 721 F. Supp. 506 (S.D.N.Y. 1989) the plaintiff asserted negligent misrepresentation and sought employment income allegedly lost as a result of the his reliance on the defendant's misrepresentations but did not seek lost pension benefits. The court, therefore, held plaintiff's claim was not preempted. Id. at 512. By contrast, the court held the plaintiff's claims for breach of contract whereby he sought to increase the amount of his monthly pension benefits upon the termination of his employment did constitute an alternative cause of action to collect benefits protected by ERISA and, therefore, were preempted. Id.

Totton v. New York Life Ins. Co., 685 F. Supp. 27 (D. Conn. 1988) involved an alleged breach of an oral promise of continued employment, not a promise of benefits. In connection with their claims, plaintiffs sought recovery of the damages incurred due to the alleged breach. Id. at 30-31.

The plaintiff in McNamee v. Bethlehem Steel Corp., 692 F. Supp. 1477 (E.D.N.Y. 1988) alleged breach of a collateral employment agreement, specifically, an alleged promise by the defendant to bridge the plaintiff's employment during a break in service for pension plan vesting purposes. The court found that a resolution of the plaintiff's breach of contract claim would neither determine whether any ERISA benefits would be paid nor directly

24

affect the administration of the ERISA plan.  Indeed, the plaintiff did not seek benefits under the plan or even damages for defendant's failure to provide such benefits.  Therefore, the state law claim was not pre-empted. Id. at 1479.

Dipietro-Kay Corp. v. Interactive Benefits Corp., 825 F. Supp. 459 (D. Conn. 1993) involved a dispute between an employer and a third party vendor regarding the sale of a benefit plan and, specifically, an alleged misrepresentation related to the sale of the benefit plan. Again, there was no claim that the defendant improperly administered the plan, and the damages sought were in connection with the alleged misrepresentation. Id. at 461.

Finally, Warzecha v. The Nutmeg Cos. Inc., 48 F. Supp.2d 151 (D. Conn. 1999) involved a claim for breach of an alleged employment agreement regarding the plaintiff's wages and reimbursement for gasoline credit card charges.  There was no claim for failure to pay ERISA plan benefits.  The court found the claim did not attempt to restructure employee benefits, affect the administration of an employee benefit plan, or create an alternative enforcement mechanism to obtain plan benefits.  Therefore, the court concluded preemption was not warranted. Id. at 160-61.[10]

In the instant case, by contrast, Plaintiff specifically seeks the benefits provided for under the Severance Plan or, as he states, "the package."  Therefore, Plaintiff's claims directly will impact the Severance Plan and the administration of the Plan and, as such, are preempted.[11]

---

[10] Three of the cases cited by Plaintiff, Torosyyan v. Boehringer Ingelheim Pharmaceuticals, Inc., 234 Conn. 1, 662 A.2d 89 (1995), D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206, 213 (1987), and Cantavero v. Horizon Meat and Sea Food Distributors, Inc., 1998 WL 550756 (Conn. Super. August 20, 1998), do not even involve ERISA pre-emption.

[11] Moreover, for the reasons set forth in Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment (see pages 27-33), Defendants contend that Plaintiff's state law claims also should be dismissed as a matter of law because Plaintiff cannot satisfy the elements of these claims.

## POINT VI

### PLAINTIFF'S CLAIM UNDER ERISA § 510 FAILS BECAUSE HE NEVER BECAME ENTITLED TO BENEFITS UNDER BOTH THE SERP AND THE SEVERANCE PLAN AT THE SAME TIME.

In his Opposition Brief, Plaintiff does not even address or deny Defendants' argument that Plaintiff's § 510 claim is barred because, as a matter of law, a plaintiff cannot maintain an action under ERISA § 502(a)(3) (the enforcement provision for § 510) where, as here, he simultaneously asserts a claim under § 502(a)(1)(B) that provides substantively the same relief. (See Memorandum of Law in Support of Defendants' Motion for Summary Judgment, p. 38). For the reasons set forth in Defendants' moving papers, therefore, Plaintiff's § 510 claim should be dismissed.

In response to Defendants' argument that Plaintiff cannot establish his § 510 claim under the McDonnell Douglas burden-shifting analysis, Plaintiff argues that Defendants apply an incorrect legal analysis and that, under the correct analysis, he has set forth a legally sufficient claim. Plaintiff's argument must be rejected, however, because it is premised on misstatements of the undisputed facts. Moreover, under either the mixed-motive or the burden-shifting analysis, Plaintiff's claim fails as a matter of law.

### A.    Plaintiff Cannot Establish a Claim for Violation of ERISA § 510 Under a Mixed-Motive Analysis

Plaintiff argues that Defendants' application of the McDonnell Douglas burden-shifting analysis to his ERISA § 510 claim is inappropriate and that, instead, this Court should apply the mixed-motive burden shifting analysis to determine whether summary judgment is appropriate. (Opposition Brief, p. 28). For the mixed-motive analysis to apply, a plaintiff initially must present sufficient evidence from which a reasonable jury could conclude, by a preponderance of the evidence, that an impermissible factor played a motivating role in an

26

employment decision. <u>Desert Palace, Inc. v. Costa</u>, 123 S. Ct. 2148 (2003). Moreover, "the plaintiff's initial burden in a Price Waterhouse mixed-motive case is heavier than the de minimis showing required to establish a prima facie McDonnell Douglas case... In short, to warrant a mixed-motive burden shift, the plaintiff must be able to produce a 'smoking gun' or at least a 'thick cloud of smoke' to support his allegations of discriminatory treatment." <u>Raskin v. The Wyatt Co.</u>, 125 F.3d 55, 60-61 (2d Cir. 1997). <u>See also</u> <u>De La Cruz v. New York City Human Resources Administration Dept. of Social Services</u>, 82 F.3d 16, 23 (2d Cir. 1996) ("[i]n a 'mixed motives' case, a plaintiff must initially proffer evidence that an impermissible criterion was in fact a 'motivating' or 'substantial' factor in an employment decision.")

Plaintiff's entire argument in favor of application of a mixed-motive analysis to his § 510 claim is premised on his factually unsupportable assertion that, at the time he spoke to Mr. Trani on September 28, 1998, or at some time thereafter, he was entitled to benefits under <u>both</u> the SERP and the Restructuring Guidelines provisions of the Severance Plan. He then claims that, since he was entitled to both, there is direct evidence sufficient to satisfy his initial burden under the mixed-motive analysis based on: (1) statements by Mr. Trani and Mr. Mathieu that he could receive either the SERP or Severance Plan benefits, but not both; and (2) evidence that Stanley manipulated his termination date to avoid paying him severance. (Opposition Brief, p. 30).

Plaintiff's argument fails, however, because its premise is factually incorrect. Specifically, the undisputed evidence establishes that Plaintiff <u>never</u> was entitled to benefits under <u>both</u> the SERP <u>and</u> the Severance Plan. Specifically, at the time of his September 28, 1998 conversation with Mr. Trani, Plaintiff had not yet vested in the SERP. (Plaintiff's Dep. I, pp. 69, 77). Therefore, even if Plaintiff was able to satisfy the conditions in order to be entitled to

27

Severance Benefits on September 28, 1998, he was not at that time also entitled to benefits under the SERP. The next communication with Plaintiff about his benefits occurred on October 12, 1998, when Mr. Mathieu sent Plaintiff a proposed agreement and general release. (Plaintiff's Dep. I, p. 83; Courtian Aff., Ex. "N"). Through the proposed agreement, Stanley offered to allow Plaintiff to remain employed until November 30, 1998 in response to Plaintiff's request that he be permitted to retire and receive benefits under the SERP. (Mathieu Dep., p. 58). In so doing, however, Stanley determined that Plaintiff no longer would be eligible for benefits under the Severance Plan because he would not have satisfied the criterion that an employee must be terminated at Stanley's initiative. (Plaintiff's Dep. I, pp. 98-101; Courtian Aff., Exs. "H" and "M," p. 70; Mathieu Aff., para. 5). Indeed, the proposed agreement did not provide for payment to Plaintiff of benefits pursuant to the Severance Plan or the Restructuring Guidelines provision thereof. (Courtian Aff., Ex. "N").

1.  **Mr. Trani's And Mr. Mathieu's Statements Do Not Demonstrate an Unlawful Intent to Deprive Plaintiff of His Benefits But Rather Demonstrate Their Belief That Plaintiff Never Became Entitled to Both the SERP and Severance Plan Benefits At the Same Time.**

Contrary to Plaintiff's argument, Mr. Trani's and Mr. Mathieu's statements and testimony do not demonstrate an intent to deprive Plaintiff of his ERISA rights but rather demonstrate their belief at all times that Plaintiff never became entitled to benefits under both the SERP and the Severance Plan because once he was permitted to remain employed to vest in his SERP, he forfeited his eligibility for Severance Plan benefits. Specifically, Mr. Trani testified "What I told him was essentially you either get the SERP or you get severed. You do not get both.... I gave a choice and he told me he wanted the SERP." (Trani Dep., p. 22). Mr. Trani explained why Plaintiff would not be entitled to Severance Plan benefits if he elected to remain

28

on and get the SERP and would not have been entitled to the SERP if he got the Severance Plan benefits, as follows:

> A:    No as in you retire at your birthday, you're 54, you're retired, you get the SERP we're over. Everybody basically leaves happy. You've retired from the company, not got severed from the company and we're done....
>
> Q:    ...— and you think that it's appropriate for you or Mr. Mathieu to suggest that he cannot receive the severance, he should not claim the severance or you would withdraw the SERP?
>
> A:    Absolutely.
>
> Q:    Why is that okay?
>
> A:    Because he was being severed before the SERP was to be consummated so therefore, it was only because of the largess by the company that we allow him to receive the SERP so of course I would think that it's --- just like every other individual ---... just like every other individual who had left the company, because they had not reached the SERP age and had received severance. There would be no difference in Mr. Kornbrekke's case from any other one that had transpired already or, frankly, that has transpired since.
>
> Q:    If he is severance eligible, you think you can threaten to pull the SERP from him if he pursues his claim for a severance?
>
> A:    No, that's not what I said. What I said was he was not eligible for the SERP, because he had not reached that age in which he was entitled to it. So, if he is not entitled to it, there is nothing to be pulled.... basically this individual was given a choice at the time of his severing from the company as to whether he would be allowed to retire and receive the SERP or he wanted to receive a severance package. That was the choice. He made the choice of the SERP. In fact, he was the one who suggested that he – he was the one who brought it to me, because otherwise he would have gotten the severance but not the SERP."

(Trani Dep., pp. 23, 28- 30). Mr. Trani's testimony clearly sets forth the rationale as to why Plaintiff never became entitled to both the Severance Plan benefits and the SERP. Plaintiff's mischaracterization of Mr. Trani's testimony on page 30 of his Opposition Brief must be disregarded.

Furthermore, for the same reasons, Plaintiff's mischaracterization of Mr. Mathieu's statements to Plaintiff also must be disregarded. Indeed, Plaintiff claims Mr. Mathieu similarly told him that he could either receive the Severance Plan benefits or the SERP, but not

both. Rather than demonstrating an unlawful intent to deprive Plaintiff of his ERISA entitlements, this statement further supports the fact that there was no violation of § 510 because Plaintiff never became entitled to benefits under both. In accepting Stanley's offer to allow Plaintiff to remain employed until he became vested in the SERP, Plaintiff forfeited his eligibility for benefits under the Restructuring Guidelines provision of the Severance Plan because he no longer was terminated at Stanley's initiative.

<strong>2.    There is No Evidence That Stanley "Manipulated" Plaintiff's Termination Date. Rather, Plaintiff Unilaterally Selected December 4, 1998 As His Last Day With Stanley.</strong>

Plaintiff also claims that there is evidence that Stanley manipulated his termination date and that this serves as direct evidence that Stanley intended to interfere with Plaintiff's ERISA rights. First, evidence of a "manipulation" of Plaintiff's termination date does not rise to the level of a "smoking gun" or "thick cloud of smoke" sufficient to warrant a mixed-motive burden shift. Second, the undisputed evidence refutes Plaintiff's claim that Stanley "manipulated" his termination date in order to deprive him of his ERISA benefits. Indeed, the evidence is that, through the proposed agreement and general release delivered to Plaintiff on October 12, 1998, Stanley included November 30, 1998 as Plaintiff's last day of employment based on Plaintiff's request that he be permitted to remain employed until he vested in the SERP. (Mathieu Dep., 58). Plaintiff rejected the proposed agreement and general release. (Courtian Aff., Ex. "K"). Thus, the terms of the proposed agreement never took effect. Thereafter, Mr. Mathieu told Plaintiff's counsel that Stanley wished Plaintiff to remain employed indefinitely until Stanley found a replacement for Plaintiff. (Penzel Dep., pp. 63, 69, 75-77; Plaintiff's Dep. I, pp. 125-26; Courtian Aff., Ex. "L"). Thus, the change in Plaintiff's termination date came after Plaintiff rejected Stanley's initial proposal.

Moreover, Mr. Mathieu told Plaintiff's counsel that if Plaintiff left his employment with Stanley prior to the date designated by Stanley as his last day of work, his termination would be considered voluntary, and he would be ineligible for Severance Plan benefits. (Penzel Dep., pp. 70-1, 77-8). Thus, Plaintiff had an opportunity to again become entitled to the benefits but chose instead to make December 4, 1998 his last day of employment because he had obtained another job. (Plaintiff's Dep. I, pp. 116-17; Penzel Dep., pp. 75-76). Plaintiff, therefore, voluntarily forfeited his opportunity for Severance Plan benefits.

* * * *

Based on the foregoing, Plaintiff has not come forward with evidence sufficient to justify application of a mixed-motive analysis to his ERISA § 510 claim. Even if he had adduced such evidence, for the reasons set forth in Point II, <u>supra</u>, Defendants have established a legitimate basis for the denial of Plaintiff's claim for benefits under the Restructuring Guidelines provisions of the Severance Plan and would have denied his claim regardless of any impermissible motive. Specifically, Plaintiff did not satisfy the criteria in order to be entitled to benefits under the Restructuring Guidelines of the Severance Plan. Therefore, even under a mixed-motive analysis, Plaintiff's claim fails.

**B.**    **Plaintiff Cannot Establish a Claim for Violation of ERISA § 510 Under the McDonnell Douglas Framework.**

Because Plaintiff cannot establish a prima facie case and cannot satisfy his ultimate burden of proof, his ERISA § 510 claim fails under the <u>McDonnell Douglas</u> framework as well. Even accepting the modification urged by Plaintiff of the elements of a prima facie case, Plaintiff fails to satisfy his burden. Indeed, for all the reasons set forth in Point II, <u>supra</u>, Plaintiff was not eligible, nor was he about to become eligible, for benefits under the Severance Plan. Nor has Plaintiff produced evidence that he was denied Severance Plan benefits under

31

circumstances giving rise to an inference that Defendant engaged in any conduct with a specific intent to deny him benefits. As discussed in Point VI A. 1, supra, the statements of Mr. Trani and Mr. Mathieu do not evidence an intent to interfere with or deny Plaintiff of benefits to which he was entitled. Rather, their statements illustrate their belief that Plaintiff never became entitled to benefits under both the SERP and the Severance Plan. Furthermore, as discussed in Point VI A. 2, supra, there is no evidence of an unlawful attempt to manipulate Plaintiff's termination date. Rather, Plaintiff unilaterally selected December 4, 1998 as his termination date so that he could accept other employment.

After a defendant proffers evidence of a legitimate reason for its conduct, the burden shifts back to the plaintiff to establish by a preponderance of the evidence that the legitimate reasons offered were not the true reasons for Defendants' conduct but were a pretext for unlawful conduct. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000). The ultimate burden of persuading the trier of fact that the defendant intentionally acted unlawfully remains at all times with the plaintiff. Id.

Here, Plaintiff's "evidence of pretext" is his claim that Defendant has provided inconsistent justifications for the denial of Severance Plan benefits to Plaintiff. (Opposition Brief, pp. 34-35). However, a closer examination reveals that all of Defendant's "justifications" for the denial of Plaintiff's claim for benefits were for the same reason, namely, because Plaintiff did not satisfy the eligibility criteria under the terms of the Restructuring Guidelines of the Severance Plan. Thus, Plaintiff was informed that if he wished to qualify for the SERP by remaining employed until he turned 54, then he no longer would be entitled to benefits under the Severance Plan. After Plaintiff rejected the Agreement and General Release proposed by Stanley, Stanley decided to retain Plaintiff until it found a replacement for him. At that time,

Plaintiff was informed, again, that he only would be entitled to Severance Plan benefits if he remained employed until the termination date selected by Stanley. This rationale never has shifted and is consistent with Stanley's written policy.

Similarly, the requirement that an individual's job be eliminated due to restructuring in order for such individual to be eligible for benefits under the Restructuring Guidelines of the Severance Plan also never has changed. (Courtian Aff., Ex. "J"). The fact that Mr. Mathieu emphasized to Plaintiff's counsel that Plaintiff would not be entitled to the Severance Plan benefits if he left voluntarily made sense because Plaintiff's counsel specifically told Mr. Mathieu that Plaintiff did not plan to remain employed indefinitely, as requested by Stanley. The fact that Mr. Mathieu did not also mention in this conversation the other criteria required in order to receive Severance Plan benefits does not render them inapplicable. Similarly, as discussed in Point I B, supra, the benefits received by three other executives pursuant to individually-negotiated separation agreements does not nullify or change the eligibility criteria in order to received benefits under the Restructuring Guidelines provisions of the Severance Plan.

Because Plaintiff fails to produced evidence establishing that Defendants' reason for denying Plaintiff's claim for Severance Plan benefits was pretextual and that the real reason was because of an unlawful intent to deprive Plaintiff of ERISA rights to which he was entitled, his ERISA § 510 claim fails as a matter of law and should be dismissed accordingly.

### POINT VII

### DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS TO COUNT III OF THE SECOND AMENDED COMPLAINT.

Plaintiff concedes he is not pursuing his claim under Count III of the Second Amended Complaint for breach of contract based on Stanley's denial of his bonus under the

MICP for the 1998 calendar year. (Opposition Brief, p. 36). Therefore, Defendants are entitled to judgment as to Count III.

## CONCLUSION

For the reasons and based upon the authorities set forth above and in the Memorandum of Law in Support of Defendants' Motion For Summary Judgment, Defendants respectfully request that the Court grant Defendants' Motion and dismiss Plaintiff's Complaint in its entirety with prejudice.

Respectfully submitted,

JACKSON LEWIS LLP
59 Maiden Lane, 40th Floor
New York, New York 10038
(212) 697-8200


One North Broadway, Suite 1502
White Plains, New York 10601
(914) 328-0404

Dated: December 24, 2003          By: _____
     New York, New York                      Elise M. Bloom (CT01451)
     White Plains, New York               Jennifer Courtian (CT24058)
                                  Robert R. Perry (CT22698)


ATTORNEYS FOR DEFENDANTS
THE STANLEY WORKS and THE
STANLEY WORKS HUMAN RESOURCES
RESTRUCTURING PLAN-5/13/97

34

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

FILED

**Jackson Lewis LLP**
**59 Maiden Lane, 40th Floor**
**New York, New York 10038**
**(212) 545-4000**

2003 DEC 29  A 10: 25

U.S. DISTRICT COURT
HARTFORD, CT.

**One North Broadway, Suite 1502**
**White Plains, New York 10601**
**(914) 328-0404**

**Attorneys of Record for Defendants**
**Elise M. Bloom (CT01451)**
**Jennifer B. Courtian (CT24058)**
**Robert R. Perry (CT22698)**

-----------------------------------------------x

**HENNING N. KORNBREKKE,**              :
                                        :
                  **Plaintiff,**        :
                                        :
        **-against-**                   :
                                        :   **Civ. No: 301CV00658 (AWT)**
**THE STANLEY WORKS and THE**           :
**STANLEY WORKS HUMAN**                 :
**RESOURCE RESTRUCTURING**              :
**PLAN - 5/13/97,**                     :
                                        :
                  **Defendants.**       :
-----------------------------------------------x

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of December, 2003, I cause to be served on

Plaintiff a true and correct copy of the Reply Memorandum of Law in Further Support of

Defendants' Motion for Summary Judgment and the Supplemental Affidavit of Jennifer B.

Courtian In Support of Reply Memorandum of Law In Support of Defendants' Motion for

Summary Judgment via Federal Express using a pre-paid Federal Express label addressed to

Plaintiff's counsel of record at the following address:

Lewis H. Chimes, Esq.
Garrison, Phelan, Levin-Epstein, Chimes & Richardson, P.C.
405 Orange Street
New Haven, CT 06511

Jennifer B. Courtian